# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMY VAUGHN PINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: CIV-15-319-F |
| ) | |
| FNU PLEDGER, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Jeremy Vaugh Pinson (Plaintiff), a federal prisoner appearing pro se,[1] brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging violations of certain constitutional rights. United States District Judge Stephen P. Friot has referred the matter to the undersigned United States Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, the undersigned recommends the revocation of Plaintiff's in forma pauperis status and the dismissal without prejudice of this conditionally-filed action unless Plaintiff pays the full $400 filing fee within twenty-one days from the date of any order adopting this Report and Recommendation.

## I. Procedural History

Plaintiff filed his Complaint on March 27, 2015, alleging *Bivens* claims against two Oklahoma-City-based federal corrections officers for violating his rights under the Eighth Amendment to the U.S. Constitution. [Doc. No. 1]. On March 31, 2015, the United States Magistrate Judge to whom this matter initially was referred entered an Order directing Plaintiff to either pay the $400.00 filing fee or submit an application to proceed in forma pauperis (IFP).

---

[1] The Court construes Plaintiff's pro se filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[Doc. No. 5]. Citing this Court's previous denial of IFP status to Plaintiff in *Pinson v. Fed. Bureau of Prisons*, No. CIV-12-843-F, 2012 WL 3872015 (W.D. Okla. Aug. 27, 2012), due to his having accrued three or more "strikes" under 28 U.S.C. § 1915(g), the Court ordered Plaintiff to show cause "why the application should be authorized in light of the existence of three or more dismissals of civil actions for frivolousness or failure to state a claim on which relief can be granted." [Doc. No. 5 at p. 2].

On April 4, 2015, Plaintiff filed a Notice of Address Change and Response to Court Order in which he asserted that the imminent danger exception to 28 U.S.C. § 1915(g) applies based on his allegations that Defendants denied him life-saving epilepsy medications; improperly housed him – a suicidal epileptic – "in solitary confinement with access to materials to commit self-harm while denying mental health treatment"; and called him a snitch in the presence of other inmates. [Doc. No. 7]. Plaintiff filed an Amended Complaint on April 7, 2015, in which he extends his *Bivens* claim to three Oklahoma-City-based federal corrections officers and adds claims under the Federal Tort Claims Act against the United States, the Federal Bureau of Prisons (BOP), and certain private healthcare providers. [Doc. No. 6]. Plaintiff requests injunctive relief against the BOP "to cease using solitary housing in SHU for mentally ill prisoners such as plaintiff" and "ordering BOP to immediately provide Plaintiff prescribed epilepsy and psychiatric medication." *Id.* Plaintiff further seeks compensatory and punitive damages in the amount of $5,000,000.00. *Id.*

On June 5, 2015, Plaintiff filed an Application for Leave to Proceed in Forma Pauperis. [Doc. No. 9]. The Court granted IFP status to Plaintiff and ordered him to pay an initial partial filing fee of $3.10 on or before June 29, 2015. [Doc. No. 8]. On July 2, 2015, Plaintiff filed a Motion Regarding Partial Filing Fee and supporting documentation showing he had a balance of

$0 in his prison trust account. [Doc. No. 11]. On July 30, 2015, the Court entered an Order Granting Leave to Proceed in Forma Pauperis Based on Showing of Good Cause for Nonpayment of Initial Filing Fee, permitting Plaintiff to proceed without prepayment of an initial partial filing fee. [Doc. No. 12]. The referral in this matter was transferred to the undersigned August 6, 2015.

On October 5, 2015, this Court entered both an Order to Agency Having Custody of Plaintiff for payment of the inmate filing fee [Doc. No. 13] and an Order Requiring Service and Special Report. [Doc. No. 14]. On November 27, 2015, the United States Attorney's Office in the Western District of Oklahoma received Plaintiff's summons and Complaint.[2] On December 7, 2015, the United States filed a Motion to Revoke Plaintiff's in Forma Pauperis Status and a Motion for Order for Relief from Filing Special Report [Doc. Nos. 26, 27], followed on January 21, 2016, by a Motion for Extension of Time for Federal Defendants to Answer Plaintiff's Amended Complaint. [Doc. No. 41]. On January 21, 2016, this Court granted the extension of time, ordering the federal defendants to file their responsive pleadings to Plaintiff's Amended Complaint within sixty days of the date this Court rules on their Motion to Revoke Plaintiff's in Forma Pauperis Status, if necessary. [Doc. No. 42].

Defendant EMSA filed a Motion to Dismiss for Lack of Jurisdiction on January 27, 2016 [Doc. No 45]. On February 4th, 2016, Defendant Integris South Oklahoma City Hospital filed a Motion to Dismiss [Doc. No 49]. Defendant Jeffrey Golightly, M.D., filed his own Motion to Dismiss [Doc. No. 53] the next day. Plaintiff's responses to these motions were due February 17, 25, and 26, 2016, respectively [Doc. No. 14 at p. 2]. *See* LCvR 7.1(g). On February 8, 2016, Plaintiff moved for an evidentiary hearing on Defendants' IFP revocation motion [Doc. No. 54].

---

[2] The United States denies proper service of the Complaint on any Defendant, stating "to whom it is directed is not at all clear." *See* Doc. No. 26, at p. 3.

On March 7, 2016, he moved for the appointment of counsel and to stay the case and enlarge all deadlines for a period of ninety days [Doc. Nos. 56, 57]. In support of his Motion to Stay, Plaintiff declared he recently underwent emergency surgery to repair a ruptured colon, but he did not indicate the date of the surgery or attach any related documentary evidence. [Doc. No. 56].

## II. Analysis

### A. Plaintiff Is a "Three-Striker" Subject to Sanctions under the PLRA

We first consider Defendants' Motion to Revoke Plaintiff's in Forma Pauperis Status [Doc. No. 26]. The federal IFP statute generally authorizes courts to waive ordinary filing fees for indigent plaintiffs. *See* 28 U.S.C. § 1915(a)(1). In 1996, "in the wake of a sharp rise in prisoner litigation in the federal courts," Congress enacted the Prison Litigation Reform Act (PLRA), which "contains a variety of provisions designed to bring this litigation under control." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "One of these provisions is 28 U.S.C. §1915(g), which Congress added 'to revoke, with limited exception, [IFP] privileges for any prisoner who has filed three or more lawsuits that fail to state a claim, or are malicious or frivolous,'" and is generally referred to as the three-strike provision. *Childs v. Miller*, 713 F.3d 1262, 1265 (10th Cir. 2013) (*quoting Skinner v. Switzer*, 562 U.S. 521, 535-36 (2011)); *see Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011).

The PLRA does not bar a prisoner with three strikes from filing new civil actions; rather, it eliminates a three-striker's privilege of proceeding IFP "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This sanction is permissible because "proceeding [IFP] in a civil case is a privilege, not a right – fundamental or otherwise.'" *White v. State of Colo.*, 157 F.3d 1226, 1233 (10th Cir. 1998) (internal citations and quotation marks

4

omitted). Indeed, the Supreme Court has stated federal courts have "a duty to deny [IFP] status to those individuals who have abused the system." *In re Sindram*, 498 U.S. 177, 180 (1991).

Plaintiff is a well-known frequent filer in federal courts across the country.[3] A review of the PACER Service Center's U.S. Party/Case Index reflects that since 2006, Plaintiff has filed over 140 civil actions, including more than sixty prisoner's rights cases under 42 U.S.C. § 1983 (denoted by Nature of Suit numbers 550 and 555).[4] That Plaintiff has accumulated at least three strikes within the meaning of § 1915(g) is undisputed.[5] Both this Court[6] and the Tenth Circuit[7] previously have recognized Plaintiff's three-striker status.

---

[3] Two years ago, U.S. District Judge Lewis T. Babcock compiled Plaintiff's litigation history in *Pinson v. Armijo*, 13-cv-01567-BNB, 2014 WL 1034992 (D. Colo. Mar. 28, 2014). *See* United States' Reply in Support of Motion to Revoke Plaintiff's IFP Status [Doc. No. 37, Exh. 4].

[4] The most recent evidence of Plaintiff's litigiousness is found in Pennsylvania, where Plaintiff is now confined at USP Allenwood. *See* Notice of Change of Address [Doc. No. 58] filed March 18, 2016. A PACER search reveals Plaintiff wasted no time initiating legal actions once there: *Pinson v. Oddo*, 16-565-SHR-GS (M.D. Pa.), filed April 1, 2016 (*Bivens*); *Pinson v. Oddo*, 16-617-SHR-GS (M.D. Pa.) filed April 14, 2016 (§ 2241); *Pinson v. Valencick*, 16-1232-RDM-CA (M.D. Pa.) filed June 22, 2016 (*Bivens*); *Pinson v. Oddo*, 16-1256-SHR-GS (M.D. Pa), filed June 23, 2016 (§ 2241). These lawsuits are too new to be reflected in the totals provided above.

[5] *See Pinson v. Pineiro*, No. 09-cv-00244-WTH-GRJ (M.D. Fla. Jul. 29, 2009) (unpublished) (dismissing for abuse of judicial process; imposing a strike), *vol. dismissed*, No. 09-14528-C (11th Cir. Oct. 16, 2009); *Pinson v. Grimes*, No. 09-cv-00238-WTH-GRJ (M.D. Fla. Jul. 30, 2009) (dismissing for abuse of judicial process; imposing a strike), *aff'd in part*, No. 09-14242, 391 F. App'x 797 (11th Cir. 2010) (affirming strike but remanding dismissal with prejudice as too harsh), *cert. denied*, 562 U.S. 1013 (2010); *Pinson v. Chipi*, No. 09-cv-00283-WTH-GRJ (M.D. Fla. Jul. 30, 2009) (unpublished) (dismissing for abuse of judicial process; imposing a strike), *appeal dismissed*, No. 10-12235-B (11th Cir. Feb. 2, 2011) (unpublished) (dismissing as frivolous), *cert. denied,* No. 10-11063, 132 S. Ct. 209 (Oct. 3. 2011).

[6] *See Pinson v. Fed. Bureau of Prisons*, No. CIV-12-843-F, 2012 WL 3872015, at *1 and n.1 (W.D. Okla. Aug. 27, 2012), *report and recommendation adopted*, No. CIV-12-0843-F, 2012 WL 3872014 (W.D. Okla. Sept. 6, 2012), *appeal dismissed for lack of prosecution*, No. 12-6243 (10th Cir. Oct. 29, 2012); *Pinson v. Keffer*, No. 10-cv-1229-F (Report and Recommendation dated Jan. 18, 2011) (Plaintiff voluntarily dismissed action prior to District Judge's ruling).

### B. Plaintiff Has Failed to Show Imminent Danger of Serious Physical Injury

Because Plaintiff has at least three strikes, absent a demonstration he is "under imminent danger of serious physical injury," he is obligated to prepay the entire $400 filing fee before this Court may consider any new action. 28 U.S.C. § 1915(g). To meet the imminent-danger exception, Plaintiff must raise "specific, credible allegations of 'imminent danger of serious physical harm.'" *Kinnell v. Graves*, 265 F.3d 1125, 1127-28 (10th Cir. 2001); *see Hafed*, 635 F.3d at 1179; *White*, 157 F.3d at 1232). "[V]ague and utterly conclusory assertions" of physical injuries are insufficient to meet the imminent-danger exception, *White*, 157 F.3d at 1231-32, as are allegations of past harm. *Stine v. Fed. Bureau of Prisons*, 465 F. App'x 790, 793 (10th Cir. 2012) (unpublished).

"An appellant should make his allegations of imminent danger in his motion for leave to proceed [IFP]. But even if he points to other papers to establish his allegations of imminent harm, he should make a 'specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion.'" *Hafed*, 635 at 1180.[8] Moreover, a review of Plaintiff's Amended Complaint "does not necessarily end the duty (or ability) of the district court to test [his] allegations of 'imminent danger' under the PLRA's screening provisions." *Stine*, 465 F. App'x at 794, n.4. As the Tenth Circuit explained:

> For instance, after a district court provisionally grants IFP on the basis of a showing of imminent danger, the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's

---

[7] *See Pinson v. Berkebile*, No. 13-1505, 553 F. App'x 852, 854-55 (10th Cir. 2014) (recognizing three-striker status; denying IFP; affirming determination § 2241 action properly characterized as § 1983 prison conditions action); *Pinson v. Oliver*, No. 14-1260, 601 F. App'x 679, 683-84 & n.5 (10th Cir. Feb. 10, 2015) (discussing Plaintiff's "lengthy and abusive filing history"; acknowledging Plaintiff is subject to sanctions under PLRA; imposing filing restrictions).

[8] Plaintiff made no allegations of imminent danger in either his Motion for Leave to Proceed in Forma Pauperis or his subsequent Motion Regarding Partial Filing Fee [Doc. Nos. 9, 11].

> provisional determination on the face of the complaint that [the prisoner] satisfies the 'imminent danger' element. When a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict. A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations. If the defendants challenge the factual allegations supporting the imminent danger exception, the district court must then determine whether these allegations are credible. Moreover, nothing prevents a district court from discrediting factual claims of imminent danger that are clearly baseless . . . .

*Id.* (internal citations and quotation marks omitted). Thus, a reviewing court is not bound by the allegations a plaintiff makes in support of an IFP application where the defendant submits uncontroverted evidence proving those allegations baseless.

As set forth in his Amended Complaint, the acts about which Plaintiff complains allegedly occurred while he was housed at the Federal Transfer in Oklahoma City, Oklahoma (FTC-OKC) in March of 2015 [Doc. No. 6 at p. 2]. Plaintiff, who claims he has epilepsy, schizoaffective disorder, autism, and gender dysphoria, alleges that – prior to his move to FTC-OKC while at the Medical Center for Federal Prisoners in Springfield, Missouri – he had been "stabilized on a regimen of Lithium, Ativan, Phenobarbital, Gabapentin, Perphenazine spread four times a day," and "was kept out of an isolated housing area though celled alone." *Id*. Plaintiff alleges that on or about March 13, 2015, he "was moved to FTC OKC and pursuant to the wishes of Defendant Letter [FTC-OKC Chief of Security] was assigned to SHU and given extra precautions of Recreate Alone, House Alone, Security Box on cell door, no blankets or sheets, no soap, shampoo, razor, toothpaste, toothbrush." *Id*. Plaintiff alleges Defendant Pledger issued Plaintiff a bottle of 100 tablets of Tylenol. *Id*. Plaintiff further claims that once he began complaining to staff "about the extraordinary restrictions and isolation . . . Officer Pledger, in front of 2 dozen inmates called plaintiff a 'whiny ass snitch['] which caused a black gang member at recreation to threaten to kill plaintiff with a knife . . . ." *Id*. Plaintiff alleges that "[a]t

the next recreation period Officer Tomlinson was verbally abusive to plaintiff revealing animus towards transgender inmates," and that, when he reported this conduct, Defendant Tomlinson called Plaintiff a "snitch." *Id.* at p. 3.

On March 27, 2015, "distraught over the withholding of psychiatric and epilepsy medications, the isolation and the harassment" Plaintiff states he "overdosed on the 100 Tylenol in a suicide attempt," his eighth in four years. *Id.* Plaintiff alleges Defendants "caus[ed] a near 3-hour delay in the EMSA ambulance team arriving." *Id.* Once at the hospital, Plaintiff claims Defendants Golightly and Unknown Nurse "refused any lifesaving measures (i.e., Tylenol Antidote) insisting they did not want 'cops with rifles in our hospital scaring patients.'" *Id.* Plaintiff insists these actions were in contravention of community standards of care, and resulted in "irreversible liver damage" to Plaintiff. *Id.* Upon his return to FTC-OKC, Plaintiff alleges he was placed in a suicide prevention cell and that Defendant Letter ordered another officer to turn off Plaintiff's water "depriv[ing] Plaintiff of basic hydration" and rendering him unable to flush the toilet for twenty-two hours. *Id.* Then, "[d]espite continued feelings of suicide," Plaintiff states he was returned to the SHU under the original restrictions plus "No Recreation" and "No Shower." *Id.* at p. 4. Plaintiff claims he did not receive his epilepsy or psychiatric medications for three weeks, experienced six grand mal seizures, and that there was no one to help him given that he was kept "in total isolation with minimal supervision." *Id.*

Defendant United States (Defendant) has submitted documentary proof that Plaintiff's allegations of imminent harm are unworthy of credence. *See* United States' Reply to Plaintiff's Response to United States' Motion to Revoke Plaintiff's *in Forma Pauperis* Status (Reply Brief) [Doc. No. 37] and Sealed Exhibits thereto [Doc. No. 38]. Regarding Plaintiff's suicide attempt and subsequent risk, the record evidence shows that on March 27, 2015, Plaintiff ingested

Tylenol in the presence of a guard; the lethality of his attempt was assessed as "low"; and he was immediately moved to a "heightened visibility" cell where staff could easily observe him. [Doc. No. 38-1, at p. 4]. Plaintiff was seen by one or more prison psychologists nearly every day thereafter until he was transferred; he denied suicidal ideation at each session [Doc. No. 38-1 at pp. 1-9]. *See White*, 157 F.3d at 1232 (holding inmate's allegations of imminent danger not credible where he "had, in fact been seen by medical personnel on more than one hundred occasions over the course of twenty months for a veritable panoply of ailments."). In addition, while Plaintiff alleged his suicide attempt was due to his being "distraught" over his isolation, harassment, and the withholding of medications, the psychologist's notes taken both the day of and the day after Plaintiff ingested Tylenol reveal Plaintiff "believes he engaged in self-injurious behaviors yesterday . . . out of frustration of not being transferred to his designated institution." [Doc. No. 38-1 at pp. 4, 9].

Having denied on multiple occasions he was experiencing suicidal ideation at the time, Plaintiff cannot now claim he was in imminent danger of taking his own life for the purpose of avoiding paying a filing fee. *See Widner v. Butler*, No. 140cv0874-NJR, 2014 WL 3932519, at *2 (S.D. Ill. Aug. 12, 2014) (holding prisoner may not escape the three strikes provision of the PLRA by inflicting "imminent danger" on himself); *Pauline v. Mishner*, No. 09-00182 JMS/KSC, 2009 WL 1505672, at *2 (D. Haw. May 28, 2009) ("Although Plaintiff states that he has harmed himself again, may be suicidal, and may harm others, Plaintiff has not shown that he was in imminent danger of serious physical injury when he filed this complaint."); *Cooper v. Bush*, No. 3:06-cv-653-J-32TEM, 2006 WL 2054090, at *1, n.3 (M.D. Fla. Jul. 21, 2006) (holding that plaintiff's allegations he will commit suicide, or that he has already attempted suicide and will do so again, insufficient to show imminent danger); *Wallace v. Cockrell*, No. 03-

9

mc-98-K, 2003 WL 22961212, at *2 (N.D. Tex. 2003) (unpublished) (reasoning prisoner who claimed he was suicidal "cannot create the imminent danger so as to escape the three strikes provision of the PLRA."). Thus, Plaintiff's claim he was in imminent danger of taking his own life is both belied by contemporaneous counseling reports and an insufficient basis to show he comes under the imminent-danger exception to § 1915(g).

Plaintiff's repeated allegations Defendants denied him epilepsy medication and an antidote for Tylenol poisoning are likewise insufficient to show he was in imminent danger of serious physical injury. His claim Defendants denied him his epilepsy medication is demonstrably false. The contemporaneous Medication Administration Records show Plaintiff received phenobarbital twice daily as prescribed each day he was housed at FTC-OKC. [Doc. No. 38-2, at pp. 2-3]. Moreover, Plaintiff fails to name which Defendant supposedly denied him the medication. Plaintiff's allegation Defendants failed to provide him activated charcoal after his having ingested an overdose of Tylenol is likewise demonstrably false, and his claim he suffered "irreversible liver damage" as a result speculative at best. The Crisis Intervention Report from the date of his supposed suicide attempt states, "aside from refusing to accept the activated charcoal, [Plaintiff] was cooperative." [Doc. No. 38-1, at p. 9]. As with his claim he continued to be suicidal, Plaintiff cannot now avoid paying the filing fee by declaring Defendants withheld life-saving medications in the face of incontrovertible, contemporaneous, record evidence to the contrary. Defendants thus have successfully rebutted both of Plaintiff's denial-of-medication claims. *See White*, 157 F.3d at 1232 (holding prisoner's allegation that "contains no specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion" insufficient to satisfy imminent-danger exception).

Plaintiff's final allegation – that Defendants, in the presence of other prisoners, labelled him a snitch, which put him in imminent danger of violent attack by other inmates – is one he previously has asserted in multiple lawsuits.[9] *See Pinson v. Frisk*, 13-cv-5502, 2015 WL 738253, at *3-4 (N.D. Cal. 2015) (unpublished) (listing multiple cases in which Plaintiff alleged he was in imminent danger of serious harm from other inmates because he had been labelled a snitch). Stating that "[t]o determine whether a plaintiff's litigation history demonstrates an abuse of the IFP privilege, courts should examine the number, content, frequency, and disposition of the plaintiff's previous filings," the *Frisk* court reasoned "[g]iven the large number and frequency" of Plaintiff's filings, "which are, for the most part, frivolous and sometimes malicious," Plaintiff fell within its discretionary power to revoke his IFP status "to preserve its own resources and that of the defendants." *Id.* at *4-5.

Here, by Plaintiff's own admission, he was housed alone and recreated alone the entire time he was at FTC-OKC. *See* Amended Complaint at p. 2. In addition, Plaintiff "denied experiencing any concerns for his safety" to a staff psychologist [Doc. No. 38-1, at p. 2]. Accordingly, to the extent Plaintiff seeks to avoid § 1915(g) with allegations that he was in danger from assault by other inmates because Defendants labelled him a snitch, the argument fails. *See Pinson v. Fed. Bureau of Prisons*, No. 11-cv-02112-BNB, 2011 WL 6118715, at *1 (D. Colo. Dec. 8, 2011) (unpublished) (denying motion to reconsider denial of imminent-danger IFP status based on Plaintiff's "snitch" allegation where Plaintiff was housed and recreated alone, and set forth no specific allegations of ongoing serious injury); *see also Pinson v. Pacheco*, No. 10-1360, 7 F. App'x 488, 492 (10th Cir. Oct. 7, 2010) (unpublished) ("[W]e fail to

---

[9] A federal court may take notice of proceedings in other federal courts when those proceedings are relevant to matters at issue. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1172 (10th Cir. 1979).

see how being housed in the same correctional institution (rather than in the same unit or the same cell) as inmates with whom he has some unspecified history would pose an immediate risk of harm to Pinson."); *see also Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. Feb. 19, 2008 (unpublished) ("[A]llegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards.").

Plaintiff has failed to raise a credible allegation that he is in imminent danger of serious physical harm and, therefore, he does not come under the exception to § 1915(g). *See* 28 U.S.C.1915(g).

## RECOMMENDATION

It is recommended that the United States' Motion to Revoke Plaintiff's In Forma Pauperis Status [Doc. No. 26] be GRANTED; Plaintiff's IFP status be REVOKED; and the current Order to Agency Having Custody of Plaintiff for Payment of Inmate Filing Fee [Doc. No. 60] be VACATED. It is further recommended that if Plaintiff does not pay the $400.00 filing fee in full to the Clerk of the Court within twenty-one days of any order adopting this Report and Recommendation, that this action be dismissed without prejudice to refiling, pursuant to LCvR 3.3(e).[10]

---

[10] Regarding pending motions, subject to the adoption of this Report and Recommendation and Plaintiff's failure to pay the filing fee in full, the following motions would be moot: United States' Motion for Order of Relief From Filing Special Report [Doc. No 27]; Defendant EMSA's Motion to Dismiss for Lack of Jurisdiction [Doc. No 45]; Defendant Southwest Integris Medical Center's Motion to Dismiss for Lack of Jurisdiction [Doc. No. 49]; Defendant FNU Golightly's Motion to Dismiss [Doc. No. 53]; Plaintiff's Motions for Hearing [Doc. No. 54], to Stay Case [Doc. No. 56], and to Appoint Counsel [Doc. No. 57].

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objection must be filed with the Clerk of Court on or before August 12, 2016. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in the above-styled matter.

ENTERED this 22nd day of July, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE